IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LISA WATKINS,

    **Plaintiff,**

                                      Case No. 2:22-cv-390

    v.                                Magistrate Judge Elizabeth P. Deavers

BLM COMPANIES, LLC,

    **Defendant.**

**OPINION AND ORDER**

Plaintiff, Lisa Watkins, brings this action asserting claims for discrimination and retaliation under 42 U.S.C. § 1981, arising from the alleged denial of the benefits of her contractual relationship with Defendant BLM Companies, LLC ("BLM"). (Complaint, ECF Nos. 1, 3 at ¶¶ 36, 37.) With the consent of the parties (ECF No. 9), pursuant to 28 U.S.C. § 636(c), this matter is before the Court for consideration of Defendant's Motion for Summary Judgment filed on July 22, 2022. (ECF No. 11). Plaintiff did not file a response to this motion which prompted Defendant to file a motion on October 10, 2022, requesting that its Motion for Summary Judgment be deemed unopposed ("Motion to Deem"). (ECF No 12.) On November 4, 2022, Plaintiff filed an untimely request for an extension of time to respond to the Motion to Deem. (ECF No. 13.) That filing was followed three days later by a motion to file an untimely response to the Motion for Summary Judgment. (ECF No. 15.) As set forth below, Defendant's Motion for Summary Judgment (ECF No. 11) is **GRANTED.** The remaining motions, to which the Court turns first, are resolved as follows.

### I. MOTIONS RELATING TO PLAINTIFF'S FAILURE TO TIMELY RESPOND TO BLM'S MOTION FOR SUMMARY JUDGMENT

Before addressing the various motions prompted by Plaintiff's lack of timely response, some context is in order. First, the Court notes that Plaintiff is represented by counsel. Further, this case was filed after the Court granted Plaintiff's request to voluntarily dismiss without prejudice a previously filed action. That case, *Watkins v. BLM Companies, LLC*, Case No. 2:19-cv-4966, was filed on November 8, 2019. Plaintiff moved to voluntarily dismiss after Defendant had moved for summary judgment, apparently in lieu of filing a response. (*See* ECF Nos. 27 and 32 in Case No. 2:19-cv-4966).

In its Order dated June 30, 2021, dismissing the prior case, the Court discussed Defendant's objection that Plaintiff repeatedly had demonstrated lack of diligence. (*See* ECF No. 35 in Case No. 2:19-cv-4966). As the Court explained, "Defendant points out that Plaintiff initially failed to serve the Complaint within the timeframe established by the Federal Rules of Civil Procedure, failed to conduct a single deposition, and failed to respond to the Motion for Summary Judgment despite two requests for extension of time to do so." (*Id*. at 4.) Nevertheless, the Court, noting that the relevant factors to be weighed were balanced, invoked the public-policy preference for deciding cases on their merits in finding a voluntary dismissal without prejudice to be warranted.

Seven months later, Plaintiff filed her current case. During much of its pendency, Plaintiff's participation was limited to conferring for purposes of preparing and submitting the Rule 26(f) Report.[1] Notably, the date for filing dispositive motions as agreed upon the parties

---

[1] As the parties stated in their Rule 26(f) Report filed on April 19, 2022:

> The parties agree that there is no dispute that Plaintiff was precluded from conducting discovery in this matter, and is limited to the discovery she obtained in

2

and adopted by the Court in its Preliminary Pretrial Order issued April 26, 2022, was July 26, 2022. (ECF Nos. 8, 10.) Consistent with its obligation under this case schedule, BLM filed its Motion for Summary Judgment on July 22, 2022. (ECF No. 11.)

As noted, Plaintiff's failure to respond to the Motion for Summary Judgment resulted in BLM's Motion to Deem that motion unopposed. Briefly, in BLM's view, once deemed unopposed, summary judgment should be granted on the motion.

Upon receipt of Plaintiff's late-filed request for an extension of time to file a response to the Motion to Deem, the Court directed BLM to file an expedited response on or before November 9, 2022. (ECF No. 14.) In the meantime, Plaintiff filed her motion to file her Response to BLM's Motion for Summary Judgment out of time ("Plaintiff's Motion"). Consequently, the focus of BLM's expedited response (ECF No. 16) is this latter-filed Plaintiff's Motion. Because the issues arising from Plaintiff's untimeliness can be fully considered in the context of addressing Plaintiff's Motion, the earlier filed motions (ECF Nos. 12, 13) are **DENIED** as moot. Accordingly, the Court turns to the substance of Plaintiff's Motion to file her Response out of time, (ECF No. 15), and BLM's response thereto. (ECF No. 16.)

In Plaintiff's Motion, her counsel represents that he has been having intermittent issues with notices from the Southern District of Ohio going straight to the "Trash" folder in his email. He explains that he discovered this issue in another matter in late September 2022. Finally, he asserts

---

her first lawsuit against Defendant, Civil Action No. 2:19-cv-4966. *See Watkins v. BLM Companies, LLC*, Civil Action No. 2:29-cv-4966, ECF No. 35, p. 8 (June 30, 2021) (Deavers, Mag. J.). The Parties also agree that Defendant needs no additional discovery, and will use the discovery it obtained in Plaintiff's 2019 lawsuit. Therefore, no discovery deadlines need be set in this case.

(ECF No. 8 at 3.)

that, due to this issue, he did not learn that BLM had filed its Motion for Summary Judgment until BLM filed its Motion to Deem on October 10, 2022.

In response, BLM contends that Plaintiff's Motion fails to establish excusable neglect for a three-month delay, Plaintiff has demonstrated a serious and consistent lack of diligence in prosecuting her claims, and Plaintiff's explanation confirms that she could have remedied her error months ago but chose not to. The Court agrees.

In general, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time." Fed. R. Civ. P. 6(b)(1). However, if the deadline for which the extension is requested has expired, the moving party must establish that their failure to timely act was because of excusable neglect. Rule 6(b)(1)(B). "Neglect exists where the failure to do something occurred because of a simple, faultless omission to act, or because of a party's carelessness." *Mosholder v. Lowe's Home Centers, LLC*, No. 5:18-CV-1325, 2020 WL 1171549, at *1 (N.D. Ohio Mar. 11, 2020) (quoting *Morgan v. Gandalf, Ltd.*, 165 F. App'x 425, 428 (6th Cir. 2006)).

The determination of excusable neglect is "an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Serv. Co. v. Brunswick Assocs. P'ship,* 507 U.S. 380, 395 (1993). In *Pioneer,* the Supreme Court set out five factors for courts to balance when determining the existence of excusable neglect:

> (1) the danger of prejudice to the nonmoving party,
>  (2) the length of the delay and its potential impact on judicial proceedings,
> (3) the reason for the delay,
> (4) whether the delay was within the reasonable control of the moving party, and
> (5) whether the late-filing party acted in good faith.

*Howard v. Nationwide Prop. & Cas. Ins. Co.,* 306 F. App'x 265, 266–67 (6th Cir. 2009) (citing *Nafziger v. McDermott Int'l, Inc*., 467 F.3d 514, 522 (6th Cir. 2006)). The "*Pioneer* factors do not carry equal weight; the excuse given for the filing must have the greatest import." *United*

*States v. Munoz*, 605 F.3d 359, 372 (6th Cir. 2020). Indeed, "the factor provided by the party as the reason for the delay is by far the most critical to the excusable neglect inquiry." *Chapa-Gonzalez v. Comm'r of Soc. Sec.,* No. 20-10655, 2020 WL 6382718, at *1 (E.D. Mich. Oct. 30, 2020) (citing *Munoz*).

  BLM argues that the balance of these factors weighs in its favor. For her part, Plaintiff does not acknowledge these factors at all.

  With respect to the prejudice factor, BLM asserts that it has now been required to spend time and money defending Plaintiff's claims in two cases. To this end, BLM explains that it has investigated Plaintiff's allegations and prepared answers to both of Plaintiff's complaints. In the previous case, BLM deposed Plaintiff, engaged in written discovery, and participated in mediation with a third-party neutral. BLM also prepared and filed motions for summary judgment in both cases. In short, BLM has actively defended Plaintiff's claims even though Plaintiff's participation in both cases she has initiated has been minimal. Thus, the first factor supports denying Plaintiff's motion.

  The four remaining factors also weigh in BLM's favor. Plaintiff's response to the Motion for Summary Judgment admittedly is three months late. BLM has submitted an email exchange suggesting that Plaintiff's counsel has been aware of BLM's Motion for Summary Judgment since July 25, 2022. (ECF No. 16-1.) The questionable evidentiary value of that exhibit aside, the representations of Plaintiff's counsel, standing alone, raise multiple questions regarding the delay.

  For example, Plaintiff's counsel states that he learned in September 2022 of intermittent technical issues. Regardless, he had participated in preparing the Rule 26(f) Report filed in April 2022 and agreed to a dispositive motion deadline of July 26, 2022. Case management best

practices would suggest that Plaintiff's counsel calendared that date. Moreover, "[a]ttorneys have an 'affirmative duty,' which is 'minimal,' to monitor the electronic docket." *Henken v. IW Tr. Funds*, 568 F. Supp. 3d 870, 875 (S.D. Ohio 2021) (quoting *Yeschick v. Mineta*, 675 F.3d 622, 629 (6th Cir. 2012) ("Attorneys may monitor the docket from the comfort of their offices; they simply need to log-on to the CM/ECF system from a computer" (citing *Kuhn v. Sulzer Orthopedics, Inc.*, 498 F.3d 365, 371 (6th Cir. 2007))).

Further, even accepting his representation of technical issues, Plaintiff's counsel's duty of diligence would require that, immediately upon learning of those issues, he contact the Clerk's office and undertake a case review to confirm that no filings had been missed. "[A]ttorneys must inform the Court promptly when they have technical issues before they allege failure to receive documents through ECF." *Henken*, 568 F. Supp. 3d at 875 (citing *Yeschick*, 675 F.3d at 630 "[R]egardless of whether email notifications are received, parties continue to have a duty to monitor the court's docket.")). Counsel, however, fails to describe any efforts he undertook in that regard.

Moreover, again accepting counsel's representations, at the very latest, he learned of BLM's Motion for Summary Judgment on October 10, 2022. Yet, upon learning of a pending, long-unopposed dispositive motion, he failed to immediately contact either BLM's counsel or the Court to explain the circumstances. Instead, his response was to wait nearly an additional month to raise the issue with the Court and opposing counsel. For these reasons, counsel's explanation does not provide a satisfactory excuse for the significant delay. To the contrary, it confirms that the length of the delay and the reasons for the delay were well within the control of

Plaintiff's counsel. Moreover, any potential for a finding of good faith is wholly undermined by the weakness of counsel's explanation as detailed above.[2]

Attorney carelessness does not support a finding of excusable neglect. *See Nafziger*, 467 F.3d at 524 (6th Cir. 2006) (affirming denial of motion to file amended complaint out of time and noting the "pitfalls of the cyberworld" to which plaintiff's council attributed his delay did not "enhance his position"); *see also Mosholder*, 2020 WL 1171549, at *2 (attorney inadvertence or mistake generally does not constitute excusable neglect). Certainly, "[t]here are instances where the best office systems and precautions fail and matters simply fall through the cracks; it is for those instances that the excusable neglect provision exists." *Chapa-Gonzalez,* 2020 WL 6382718, at *2. As the above discussion indicates, however, that simply is not the situation here.

In sum, Plaintiff's response to the Motion for Summary Judgment was late without justification. Accordingly, her motion (ECF No. 15) is **DENIED.** The Court will treat BLM's Motion for Summary Judgment as unopposed. Contrary to BLM's position, however, this determination does not mean that summary judgment automatically follows. *VDV Properties, LLC v. State Farm Fire & Cas. Co.,* No. 2:18-CV-12501, 2019 WL 4261136, at *3 (E.D. Mich. Sept. 9, 2019) (citing *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014)). The Court must still review BLM's submitted materials and ensure that BLM has discharged its

---

[2] Additionally, the Court notes that, at the time BLM filed its Motion for Summary Judgment, Plaintiff's counsel had at least nine other cases pending in the Southern District of Ohio. Of those cases, four have settled and been dismissed and one has been reported settled with a dismissal entry due January 16, 2023. (Case Nos. 3:21-cv-63; 2:22-cv-143; 21-5747; 2:21-cv-2549; and 2:21-cv-2180). In Case No. 3:21-cv-42, summary judgment was granted in Defendants' favor. Notably, Plaintiff did not timely respond to the summary judgment motion, requiring the Court to issue a show cause order. Plaintiff's response to that order cited counsel's calendaring error. In another case currently pending before the Undersigned, Case No. 2:21-cv-4037, Plaintiff failed to timely respond to both the pending motion to dismiss and the Court's show cause order necessitated by the lack of response. It is not clear to the Court in what other case Plaintiff's counsel learned of a technical issue with the CM/ECF system.

summary judgment burden. *Id.* (citing *Cacevic v. City of Hazel Park*, 226 F.3d 483, 491 (6th Cir. 2000)). The Court undertakes that review below.

## II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden of proving that no genuine issue of material fact exists falls on the moving party, "and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stransberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (citing *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

"Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn*, 439 F. App'x 492, 495 (6th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317-324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "The nonmovant must, however 'do more than simply show that there is some metaphysical doubt as to the material facts,'. . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a 'genuine' dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (citations omitted). In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "must afford all reasonable inferences,

8

and construe the evidence in the light most favorable to the nonmoving party." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

"'[W]hen faced with an unopposed motion for summary judgment, the district court cannot grant a motion for summary judgment without first considering supporting evidence and determining whether the movant has met its burden.'" *Din Malik v. Landstar Express Am.*, 2021 WL 6063647, at *3 (E.D. Mich. Dec. 22, 2021) (quoting *Byrne v. CSX Transp., Inc.*, 541 F. App'x 672, 675 (6th Cir. 2013)). "Nonetheless, when a motion for summary judgment is unopposed, '[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record.'" *Id*. (quoting *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 405 (6th Cir. 1992)). Rather, "'[t]he court may rely on the moving party's unrebutted recitation of the evidence in reaching a conclusion that facts are uncontroverted and that there is no genuine issue of material fact.'" *Id.* (quoting *Jones v. Kimberly Clark Corp.*, 238 F.3d 421 (6th Cir. 2000). Indeed, "[i]t is 'utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the [unopposed] motion.'" *Edgecomb v. Magnesita Refractories Co.*, No. 1:19-CV-219, 2021 WL 389030, at *2–3 (W.D. Mich. Feb. 4, 2021), *reconsideration denied,* No. 1:19-CV-219, 2021 WL 5496207 (W.D. Mich. Apr. 13, 2021), and *dismissed,* No. 21-1490, 2021 WL 5263604 (6th Cir. Sept. 10, 2021) (quoting *Guarino*, 908 F.2d at 406).

## B. UNCONTESTED FACTS

The following facts are taken from Defendant' Concise Statement of Material Facts and, in the absence of any challenge, are restated here, largely verbatim, as relevant.[3] (ECF No. 11-1, ¶¶ 1-36.)

Plaintiff, Lisa Watkins, an African American individual, entered into a Property Maintenance Subcontracting Agreement with Defendant, BLM Companies, LLC ("BLM") on or about March 10, 2018 (the "Agreement"). Plaintiff read and understood the Agreement prior to signing it. Before she signed the Agreement, Plaintiff was informed that the subcontractor role is generally a part-time or sideline venture. BLM advised Plaintiff that, before signing the Agreement, she could check the website www.hudhomestore.com to get an idea of local inventory of how many HUD homes were located in the county she intended to cover. Plaintiff indicated to BLM that she wanted to work in Franklin County, Ohio.

As part of her Agreement with BLM, Plaintiff certified that she had "considerable knowledge, expertise, experience, and all the requisite licenses and equipment with respect to performing the subcontractor services set forth therein on HUD-owned properties." Plaintiff admitted at deposition that she did not have considerable knowledge, expertise, or experience performing the subcontractor services set forth in the Agreement. Plaintiff testified that, other than basic house cleaning work as a caregiver, she had never performed any of the subcontractor services set forth in the Agreement.

Plaintiff testified that she does not know whether BLM ever assigned work orders to any non-minority vendors in her area. The Agreement explicitly states that Plaintiff is not guaranteed

---

[3] For ease of reading, this restatement does not contain the citations to the record as set forth in Defendant's original filing. The Court, however, incorporates such citations by reference and will cite to the record as necessary to its analysis below.

to be assigned a specific number of work orders or any work orders at all. Specifically, Section 6(a) of the Agreement states that "[t]he Parties agree that this Subcontract is not a requirements contract," and further states that "Subcontractor has no guarantee that requests or orders for service will even be issued[.]" And Section 6(e) states: "The Parties agree that BLM has no obligation to issue any particular number of properties to Subcontractor."

On March 26, 2018, BLM reminded Plaintiff via email that the Agreement does not guarantee that she will be assigned any work. At deposition, Plaintiff admitted that BLM was not obligated to assign her any work orders. Section 19(e) of the Agreement states that the terms of the Agreement "constitutes the full and complete understanding between [BLM and Plaintiff] with respect to the subject matter hereof, and supersedes all prior agreements, arrangements and understandings, oral or written, between the Parties hereto with respect to the subject matter hereof.

BLM requires people who are going to perform work under a contract with them to complete new vendor orientation before receiving work. Plaintiff attended new vendor orientation at the Washington Court House in Ohio on April 17, 2018 conducted by BLM's Area Training Manager Jennifer Orr. Five new BLM vendors attended orientation, two of which were African American. Plaintiff testified that during orientation, Ms. Orr stated "are you kidding me" after receiving a phone alert that Starbucks was closing all stores for an entire day to conduct racial sensitivity training. Plaintiff admitted that Ms. Orr did not direct the comment at Plaintiff, and further admitted that Ms. Orr never expressed an opinion pertaining to race or whether or not Starbucks should conduct racial sensitivity training.

Plaintiff also testified that during the orientation she was unable to walk up a hill on her own and required assistance from other vendors. Plaintiff testified that her inability to walk up a hill on her own was witnessed by Ms. Orr. At deposition, Plaintiff testified that she believes that BLM did not assign her work because of her "physical characteristics" (*i.e.,* her weight) and her inability to walk up the hill during orientation.

Plaintiff admitted that she physically could not perform work required by the Agreement, such as taking care of the external maintenance of the HUD property. Plaintiff attempted to justify her inability to perform the work by stating that she planned to hire family members and other individuals to perform such work.

Pursuant to Section 8(b) of the Agreement, Plaintiff was required to obtain identification badges for all employees working for her. ("Subcontractor shall have identification badges for all employees, and require that they be worn by all personnel providing services at Assigned Properties."). Pursuant to Section 8(i) of the Agreement, Plaintiff was required to warrant that she confirmed the legal status of her personnel using the E-Verify website. ("Subcontractor warrants that all of Subcontractor's personnel used in the performance of services pursuant to this Agreement are legal for employment pursuant to all local, state, and federal laws governing worker qualifications for employment, insurance, age, and immigration status, and Subcontractor shall use the E-Verify website to confirm such legal status.").

Pursuant to Section 8(l) of the Agreement, Plaintiff was required to conduct background checks on her employees sufficient to enable her to warrant that none of them have "been convicted of a felony charge, either in state or federal court, nor [been] charged with any misdemeanor or felony stemming from facts relative to issues of fraud or moral turpitude."

Plaintiff did not have any family members or other individuals attend new vendor orientation, did not have any family members or other individuals obtain photo identification badges, did not use E-Verify to confirm that any family members or other individuals were eligible for employment, and did not determine whether any family members or other individuals had been convicted of a felony or charged with any misdemeanor or felony involving fraud or moral turpitude.

Plaintiff testified that, pursuant to the terms of the Agreement, she understood that she was required to complete all work orders within 48 hours of being assigned. Plaintiff testified that BLM assigned to her, and she received, a test work order on March 15, 2018. Plaintiff did not complete her test work order until on or about April 19, 2018, more than one month after it was assigned. During orientation, Ms. Orr notified Plaintiff not to buy any equipment because work was slow. In about mid-June, 2018, Ms. Orr advised Plaintiff there was no work available.

When Plaintiff called HUD to make an informal complaint against BLM, the HUD representative told Plaintiff that work was slow in her area. Plaintiff testified that she contacted HUD about filing a HUD complaint against BLM due to her lack of work assignments, but conceded that she never actually filed a formal HUD complaint.

Plaintiff has no knowledge of whether BLM knew of her complaint to HUD prior to this lawsuit, but HUD advised her that they never spoke with anyone at BLM about her complaint. Plaintiff never notified anyone at BLM that she made a complaint to HUD, and no one at BLM told Plaintiff that they knew about her complaint to HUD. Plaintiff never told BLM that she believed that she did not receive work assignments because of her race. Plaintiff admits

that she is unable to identify a single non-African American BLM vendor who was treated more favorably than her.

### C. ANALYSIS

Section 1981 "prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors," including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006). Thus, § 1981 claims have two elements: 1) "the plaintiff must possess some contractual right that the defendant blocked or impaired," and 2) the plaintiff must "demonstrate that racial discrimination drove the decision to interfere with these contractual rights." *Williams v. Richland Cnty. Children Servs.*, 489 F. App'x 848, 851 (6th Cir. 2012).

As noted, Plaintiff asserts claims for both discrimination and retaliation under 42 U.S.C. § 1981. Plaintiff alleges that she did not receive work assignments pursuant to the Agreement with BLM because she is African-American. (Complaint, ECF Nos. 1, 3 at ¶ 32.) Because Defendant's motion for summary judgment is unopposed, the Court concludes that there is no genuine issue of material fact and that BLM is entitled to judgment as a matter of law. As explained below, the Court agrees that BLM is entitled to summary judgment because Plaintiff cannot establish a *prima facie* case of discrimination or retaliation, cannot establish pretext, and cannot demonstrate the required but-for causation. Because Plaintiff's retaliation claim can be resolved with minimal discussion, the Court will address it first.

#### 1. Retaliation

The elements of a retaliation claim under § 1981 are the same as those under Title VII. *See Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004). Accordingly, Plaintiff must

demonstrate that (1) she engaged in protected activity; (2) her exercise of that activity was known by the BLM; (3) BLM thereafter took an action that was materially adverse to her; and (4) there was a causal connection between the protected activity and the materially adverse action. *Boxill v. O'Grady*, 935 F.3d 510, 520 (6th Cir. 2019) (citing *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014)). The framework for analyzing retaliation claims depends on whether there is direct or indirect evidence of retaliation. *Perkins v. Detroit Salt Co.*, No. 20-11211, 2021 WL 5989022, at *9 (E.D. Mich. Dec. 17, 2021). Here, Plaintiff has not presented any direct evidence of retaliation. When there is only circumstantial evidence of retaliation, courts use the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, (1973) to analyze retaliation claims under § 1981. *Id.*

Under the applicable *McDonnell Douglas* framework, Plaintiff has the initial burden of demonstrating a *prima facie* case of retaliation. *See Jackson v. Genesee County Road Commission,* 999 F.3d 333, 344 (6th Cir. 2021) (a "plaintiff may prove retaliation either through direct evidence or circumstantial evidence"). If she succeeds, then BLM has the burden of producing evidence that it terminated Plaintiff for a non-retaliatory reason. *Id.* If BLM succeeds, then Plaintiff can attempt to show that BLM's reason is merely pretext for retaliation. *Perkins,* 2021 WL 5989022, at *9. Finally, "the law is clear that retaliation claims under both Title VII and § 1981 require but-for causation." *Patel v. Trinity Health Corp.,* No. 20-10517, 2021 WL 4894637, at *14 (E.D. Mich. Oct. 20, 2021) (citing *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 489 (6th Cir. 2020)).

Plaintiff alleges that she made a complaint at the HUD office in downtown Columbus. (Complaint, ECF Nos. 1, 3 at ¶ 27.) Contrary to this allegation, however, Plaintiff testified at her deposition that she never filed a formal HUD complaint. (ECF No. 11-2 at 20.) Beyond that,

she testified that she never told anyone at BLM that she had filed a complaint with HUD. (*Id.* at 30.) She also stated that nobody from BLM ever advised her that they were aware of any complaint that she made. (*Id.* at 29.) Thus, Plaintiff cannot establish a *prima facie* case of retaliation because she cannot demonstrate that she engaged in any protected activity or that BLM was aware of any such activity. While this conclusion alone is dispositive of her retaliation claim, this claim also fails for the reasons set forth below with respect to pretext and causation.

    **2. Discrimination**

Courts also review claims of alleged race discrimination brought under § 1981 under the same standards as claims of race discrimination brought under Title VII. *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 302 (6th Cir. 2016). Under this approach, again applying the *McDonnell Douglas* framework in the absence here of any direct evidence of discrimination, Plaintiff must first establish the elements of a *prima facie* case. That is, Plaintiff has to show that she was (1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and (4) replaced by a person outside the protected class or treated differently than similarly situated nonminority employees. *Id.* at 303 (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)). If Plaintiff can establish these elements, then the burden shifts to BLM to articulate a legitimate, nondiscriminatory reason for his demotion. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802). As to the existence of legitimate and non-discriminatory reasons for its actions, BLM bears only the burden of production and not the burden of persuasion. *Garren v. CVS Rx Servs., Inc.*, 482 F. Supp. 3d 705, 717 (E.D. Tenn. 2020) (citing *Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 515 (6th Cir. 2003)). Assuming that BLM has met its burden, Plaintiff can still survive the motion for summary judgment if she can "'identify evidence from which a reasonable jury could conclude that the

proffered reason is actually a pretext for unlawful discrimination.'" *Tennial,* 840 F.3d at 303 (quoting *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011)). A plaintiff can show pretext "by offering evidence that (1) the employer's stated reason had no basis in fact, (2) the stated reason did not actually motivate the employer, or (3) the stated reason was insufficient to warrant the adverse employment action." *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014). Finally, under § 1981, it is not enough to show purposeful discrimination, a plaintiff must show such purposeful discrimination interfered with contractual rights. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006). Moreover, recent Supreme Court precedent clarified that the causation element requires a plaintiff to "initially plead and ultimately prove that, *but for* race, [they] would not have suffered the loss of a legally protected right." *Comcast Corp. v. National Ass'n of African American Owned Media*, ⸺ U.S. ⸺, 140 S. Ct. 1009, 1019 (2020) (emphasis added).

    a. ***Prima Facie* Case**

Plaintiff fails to set forth a *prima facie* case because she cannot show that she was treated less favorably than a BLM vendor outside of her protected class. At her deposition, Plaintiff testified that she could not identify any non-African American BLM vendor who was treated more favorably than she was. (ECF No. 11-2 at 26.) At most, Plaintiff testified that Miss Orr was "talking about lots of work" with two Caucasian men at the orientation. (*Id*. at 28.) The suggestion that these vendors were treated more favorably than Plaintiff with respect to receiving work assignments from BLM is purely speculation. As such, it fails to identify for the Court similarly situated nonminority vendors treated more favorably than Plaintiff. "To prevail on a similarly situated person theory, a plaintiff must identify a comparator person 'of a different race, who was similarly situated to him, but who was treated better' by a defendant." *Gray v.*

*AutoZoners, LLC*, No. 22-1069, 2022 WL 16942609, at *4 (6th Cir. Nov. 15, 2022) (quoting *Smith v. City of Toledo*, 13 F.4th 508, 515 (6th Cir. 2021)). Indeed, "[c]ourts regularly dismiss claims when a plaintiff fails to point to another employee that was similarly situated." *Jordan v. Mathews Nissan, Inc.,* 539 F. Supp. 3d 848, 874 (M.D. Tenn. 2021) (dismissing disparate pay claim brought under Title VII, 42 U.S.C. ⁋ 1981, and state law where "[p]laintiffs [did not point] the court to a similarly situated individual outside the protected class who was treated better than they were….") Thus, a reasonable jury could not find in Plaintiff's favor on this issue and summary judgment in BLM's favor is appropriate.

Plaintiff's failure to establish a *prima facie* case is fatal to her discrimination claim. However, even if she had succeeded in doing so, her claim would fail for additional reasons.

  b. **Pretext**

BLM asserts that Plaintiff was not assigned work orders because work was slow in Franklin County, the geographic area she chose to cover. This is a legitimate nondiscriminatory business reason. *See, e.g., Mickey v. Zeidler Tool & Die Co.,* 516 F.3d 516, 526 (6th Cir. 2008) (describing lack of available work as a nondiscriminatory, legitimate business reason). This reason was communicated to Plaintiff more than one time. For example, Plaintiff testified that, during orientation, Ms. Orr notified her not to buy any equipment because work was slow. (ECF No. 11-2 at 34, 96.) Plaintiff further testified that, in about mid-June, 2018, Ms. Orr advised Plaintiff there was no work available. (*Id.* at 30). Finally, Plaintiff testified that when she called HUD to make an informal complaint against BLM, the HUD representative told her that work was slow in her area. (*Id*. at 19.)

Obviously, given the posture, Plaintiff makes no argument that BLM's proffered reason was actually a pretext for discrimination. A review of Plaintiff's deposition testimony suggests,

presumably by way of pretext, that Plaintiff was told things were slow after first being told work was available, that Miss Orr made a comment in response to an alert that Starbucks was closing its stores for racial sensitivity training, and that Miss Orr appeared to have an issue with Plaintiff's requiring assistance to walk up a hill. (ECF No. 11-2 at 46.) Plaintiff, however, cannot establish pretext simply by the vague and conclusory statement that she was "told" work was available. *Adebisi v. Univ. of Tennessee,* 341 F. App'x 111, 113 (6th Cir. 2009) (conclusory statements are insufficient to prove pretext). Similarly, Plaintiff's subjective interpretations of Miss Orr's alleged reactions also are insufficient to establish pretext. *Rosenthal v. Faygo Beverages, Inc.,* 701 F. App'x 472, 480 (6th Cir. 2017) (affirming district court conclusion that a plaintiff's subjective interpretations or feelings are insufficient to establish pretext). Accordingly, viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could not conclude that BLM's stated reason for not providing her work – that work was slow -- was pretext.

Additionally, at the pretext stage, the plaintiff's burden of production 'merges' with her ultimate burden of persuasion to show that race discrimination was the but-for cause of her failure to be assigned work from BLM. *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 807 (6th Cir. 2020) (internal citations omitted). Thus, courts consider evidence of causation and pretext together. *Patel*, 2021 WL 4894637, at *16. As the above discussion indicates, there is no evidence of causal connection between Plaintiff's race and her failure to receive work assignments from BLM. Accordingly, no reasonable jury could find that but for Plaintiff's race, she would have received work assignments from BLM and Plaintiff's discrimination claim fails for this reason as well.

19

### D.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 11) is **GRANTED.**  Plaintiff's motion to file an untimely response to the Motion for Summary Judgment (ECF No. 15) is **DENIED.**  Further, Defendant's motion to deem its Motion for Summary Judgment unopposed and Plaintiff's untimely request for an extension of time to respond to the Motion to Deem (ECF Nos. 12, 13) are **DENIED** as moot.   This case is **DISMISSED**.  The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** in favor the of the Defendant.

**IT IS SO ORDERED.**


Date: December 5, 2022                             /s/ *Elizabeth A. Preston Deavers*
                                                                    ELIZABETH A. PRESTON DEAVERS
                                                                    UNITED STATES MAGISTRATE JUDGE